# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| SCARLETT VOLLMERING and TRISTAN VOLLMERING, Individually and on behalf of all others similarly situated, *Plaintiffs*, v. ASSAGGIO HONOLULU, LLC and SANG SANANIKONE *Defendants*. | Civil Action No. _____ JURY TRIAL DEMANDED COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Scarlett Vollmering ("Scarlett") and Tristan Vollmering ("Tristan") bring this action individually and on behalf of all other similarly situated individuals (hereinafter "Plaintiffs and the Putative Class Members") who worked for Assaggio Honolulu, LLC ("Assaggio") and Sang Sananikone ("Sang") (collectively "Defendants") at any time from three years preceding the filing of the Original Complaint through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, civil penalties, attorneys' fees, and costs, pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b).

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

# I.
# OVERVIEW

1. This lawsuit includes a collective action to recover the minimum wage, wrongfully withheld tips, overtime, liquidated damages, and all other applicable penalties brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*

2. Plaintiffs and the Putative Class Members are those current and former Tip-Credit Employees[1] who worked for Defendants at any time since January 4, 2019 through the final disposition of this matter and were not paid the minimum wage.

3. Defendants denied Plaintiffs and the Putative Class Members minimum wage and instead either paid them using a tip-credit wage or did not pay them any hourly wage at all.

4. Defendants' actions invalidated their use of the "tip-credit" – as such, Plaintiffs and the Putative Class members are owed the full minimum wage as well as their tips that were wrongfully withheld by the Defendants.

5. Defendants knowingly and deliberately failed to timely compensate Plaintiffs and the Putative Class Members for all hours worked at the rates required by the FLSA each workweek.

6. The decision by Defendants to not pay the minimum wage to Plaintiffs and the Putative Class Members was neither reasonable nor in good faith.

7. Plaintiffs and the Putative Class Members seek to recover all unpaid wages, liquidated damages, civil penalties, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

8. Plaintiffs also pray that all similarly situated Tip-Credit Employees (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

---

[1] Tip-Credit Employee is defined as any employee Defendants paid less than the full minimum wage of $7.25 for any hour worked at any time during the relevant statutes of limitations.

# II.
# THE PARTIES

9. Plaintiff Scarlett Vollmering ("Scarlett") was jointly employed by Defendants within the meaning of the FLSA within this judicial district within the relevant three-year period. Plaintiff Scarlett did not receive at least the minimum wage for all hours worked.[2]

10. Plaintiff Tristan Vollmering ("Tristan") was jointly employed by Defendants within the meaning of the FLSA within this judicial district within the relevant three-year period. Plaintiff Tristan did not receive at least the minimum wage for all hours worked.[3]

11. The FLSA Collective Members are those current and former Tip-Credit Employees of Defendants who were subjected to the same illegal pay system under which Plaintiffs worked and were paid (or not paid as the case is here).

12. Defendant Assaggio Honolulu, LLC ("Assaggio") is a domestic limited liability company doing business in the State of Texas and may be served through its registered agent for service: **Sang Sananikone, 6238 St. Denis Street, Corpus Christi, Texas 78411.**

13. Defendant Sang Sananikone ("Sang") is a Managing Member of Assaggio and an employer as defined by 29 U.S.C. § 203(d). San may be served at: **6238 St. Denis Street, Corpus Christi, Texas 78411, or wherever she may be found.**

14. Defendants are joint employers pursuant to 29 C.F.R. § 791.2. They have common ownership, oversight and control over Plaintiffs and the Putative Class Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

---

[2] The written consent of Scarlett Vollmering is attached as Exhibit A.

[3] The written consent of Tristan Vollmering is attached as Exhibit B.

# III.
# JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. § 201 *et. seq.*

16. This Court has personal jurisdiction over Defendants because the cause of action arose within this district as a result of Defendants' conduct within this district.

17. Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

18. Specifically, Assaggio's headquarters are in Corpus Christi, Texas and Plaintiffs worked for Defendants in Corpus Christi, Texas, all of which is located in this District and Division.

19. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

# IV.
# FACTS

20. Defendant Assaggio operates a restaurant in Corpus Christi, Texas that serves food and drinks to customers locally.[4]

### *Defendants are Joint Employers*

21. Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

22. Defendants directly or indirectly hired Plaintiffs and the Putative Class Members.

23. Defendants controlled Plaintiffs and the Putative Class Members' work schedules and conditions of employment.

24. Specifically, Defendant Sang regularly set work schedules and altered them at will, often requiring Plaintiffs and the Putative Class Members to stay long past their scheduled shift hours.

---

[4] https://www.facebook.com/ImperialCafe/.

25. Defendants determined Plaintiffs and the Putative Class Members' rate and method of payment of wages.

26. Defendants maintained control, oversight, and direction over Plaintiffs and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages for compensation.

27. Defendants mutually benefitted from the work performed by Plaintiffs and the Putative Class Members.

28. Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiffs and the Putative Class Members.

29. Specifically, Defendant Sang would regularly alter Plaintiffs' job duties, ordering them to perform dishwashing or cleaning duties in addition to their server duties.

30. Defendants shared the services of Plaintiffs and the Putative Class Members.

31. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiffs and the Putative Class Members.

32. Specifically, Defendants dictated the practice goals and what pressing or tactical items needed to be done in order to meet the goals of the respective Defendants and/or their clients.

33. Defendants had the power to hire and fire Plaintiffs and the Putative Class Members.

34. Specifically, Defendant Sang fired multiple employees during the Plaintiffs' periods of employment.

35. Defendants maintained Plaintiffs and the Putative Class Members' employment records.

36. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

37. To provide their services, Defendants employed (and continue to employ) numerous Tip-Credit Employees in the last three years.

38. Defendants failed to pay (and continue to fail to pay) their Tip-Credit Employees at least the minimum wage for all hours worked—including Plaintiffs and the individuals that make up the putative class.

39. While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work.

40. Plaintiff Scarlett worked for Defendants in Corpus Christi from July 2021 until October 2021.

41. Plaintiff Tristan worked for Defendants in Corpus Christi from July 2021 until October 2021.

### *Failure to Pay Any Wages*

42. Defendants purported to pay Plaintiffs and the Putative Class Members the tip-credit wage of $2.13 per hour.

43. However, Defendants failed to pay the tip-credit wage of $2.13 per hour and often failed to pay Plaintiffs and the Putative Class Members any compensation at all.

44. Defendants wrongfully withheld Plaintiffs and the Putative Class Members' wages under the guise of "taxes."

45. For instance, on Plaintiff Scarlett's check dated October 15, 2021, she received zero ($0.00) dollars in net pay.

46. Her check stated she grossed $389.86 between her hourly wages ($280.04) and tips ($109.82) but Defendants applied a "tax" deduction of $280.04 (which equates to a tax rate of 71.8%).[5]

---

[5] At this time, Plaintiffs have not received their W2s and are unable to confirm whether Defendants actually paid taxes for Plaintiffs and the Putative Class Members or instead kept the wages for themselves.

47. The only wages Plaintiff Scarlett received that week were from her share of the tip pool – that is, $109.82.

48. For the week prior to that, Plaintiff Scarlett's check dated September 3, 2021, had again zero ($0.00) dollars in net pay.

49. Her check stated she grossed $593.97 between her hourly wages ($134.94) and tips ($459.03) but Defendants applied a "tax" deduction of $134.94 (which equates to a tax rate of 22.7%).

50. Whatever hourly wages were due to Plaintiff Scarlett, Defendants simply deducted as "tax" in order to avoid paying her any wages at all.

51. Indeed, during her entire work period for Defendants, Plaintiff Scarlett never received a paycheck that had more than zero ($0.00) dollars on it.

52. Plaintiff Tristan also frequently received paychecks amounting to zero ($0.00) dollars.

53. During a week in September 2021, the restaurant was closed to the public, but Defendants still required Plaintiffs to perform work such as gathering groceries, cleaning, and dropping off money at the bank.

54. Although Defendants promised them pay for those hours, Defendants failed to pay Plaintiffs any wages for any of the time worked.

55. Unfortunately, this was a regular practice of Defendants' restaurant as several Tip-Credit Employees—the Putative Class Members—frequently complained out loud that their pay checks did not add up and that they had received checks of zero ($0.00) dollars.

### *Tip-Credit Failures*

56. Defendants (attempted to) utilize the "tip-credit" to (sometimes) pay Plaintiffs and the Putative Class Members a wage of $2.13 per hour.

57. Under the tip-credit provisions of the FLSA, an employer of tipped employees—like Plaintiffs and the Putative Class Members—may, under certain circumstances, pay those employees less than the minimum hourly wage and take a "tip-credit" against its minimum wage obligations.

58. But an employer is ***not*** permitted to take a tip-credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA; (2) when it requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped occupation (i.e., "dual jobs"); or (3) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds twenty percent (20%) of the employees' time worked during a workweek; (4) when it requires tipped employees to return a portion of their tips to the employer; and (5) when the employer does not ensure that the worker's wages plus tips equals at least the minimum wage for all hours worked.[6]

59. Even in the rare instances where Defendants did pay Plaintiffs and the Putative Class Members an actual wage, Defendants failed to abide by the requirements of the Tip-credit regulations and were therefore required to pay Plaintiffs and the Putative Class Members the full minimum wage.

*80/20 Failure*

60. Plaintiffs and the Putative Class Members were paid the tip wage – even when not performing tip related duties or when performing incidental duties in excess of 20% of their time worked.

61. Plaintiffs and the Putative Class Members would perform these physical janitorial duties for multiple hours per week and would spend in excess of twenty percent (20%) of their total work time performing these non-tipped and incidentally-related duties.

---

[6] 29 C.F.R. § 531.59; 29 U.S.C. § 203(m).

62. Plaintiffs and the Putative Class Members were paid the tip wage when opening or closing the restaurant despite the absence of any customers to serve. During opening or closing Plaintiff and the Putative Class Members performed janitorial duties and kitchen prep work.

63. Specifically, Plaintiffs and the Putative Class Members would sweep, mop, clean dishes, set tables, and clean tables.

64. Indeed, during Plaintiffs and the Putative Class Members' employment, there were no dishwashers or bus people, instead the Tip-Credit Employees were responsible for filling those roles.

### *Failure to Top Off Wages*

65. The FLSA mandates that when an employee's tips and cash wages do not amount to minimum wage, the employer must top off the employee's wages so that the wage plus tips received amount to the federally mandated minimum wage.

66. Defendants never topped off Plaintiffs or the Putative Class Members' wages when their tips plus cash wage did not amount to minimum wage.

67. Specifically, Plaintiff Tristan (who sometimes was actually paid an hourly wage) frequently found his hourly wage of $2.13 per hour plus tips equaled to less than the required minimum wage ($7.25).

### *Illegal Tip Pool*

68. Employers that take a section 3(m)(2)(a) tip-credit the employer may not utilize a tip pool that includes employees who do not customarily and regularly receive tips.

69. Further, managers are ***strictly*** forbidden from receiving tips in any tip pool, regardless of whether an employer utilizes the tip-credit.

70. Defendants utilized a tip pool that included cooks and Defendant Sang's son who, in addition to performing work as a sushi chef, also acted as a manager.

71. Defendants' inclusion of cooks in the tip pool invalidates their use of the tip-credit completely, as cooks and other non-tipped employees may only be included in a tip pool if all employees are paid the regular minimum wage, not the tip-credit wage.

72. Worse, the inclusion of a manger such as Defendant Sang's son is strictly prohibited.

73. By including him and paying him Plaintiffs and the Putative Class Members' tips, Defendants have wrongfully withheld tips that were the property of Plaintiffs and the Putative Class Members.

74. The FLSA mandates that when any tip amount is taken by the employer such unlawfully kept tips will be owed to the employee, plus an additional equal amount as liquidated damages, and that the employer shall be subject to a civil penalty not to exceed $1,100 for each such violation.[7]

75. The FLSA mandates that all employees shall be paid at least the minimum wage of $7.25 per hour for all hours worked.

76. As described above, Defendants' actions invalidated their use of the tip-credit regulation, and they therefore should have paid Plaintiffs and the Putative Class Members the full minimum wage for all hours worked.

77. Defendants' denied Plaintiffs and the Putative Class Members the minimum wage as a result of a widely applicable, illegal pay practice.

78. At no point did the Plaintiffs and the Putative Class Members ever receive the full minimum wage.

79. In fact, in many cases Plaintiffs and the Putative Class Members did not even receive the tip-credit wage of $2.13 per hour.

---

[7] 29 U.S.C.A. § 216(e)2

80. Defendants applied these pay practices despite clear and controlling law that states that Plaintiffs and the Putative Class Members were entitled to the full minimum wage for all hours worked.

81. As a result of Defendants' corporate policy and practice of requiring Plaintiffs and the Putative Class Members to perform substantial amounts of non-tipped work at the tipped wage, requiring Plaintiffs and the Putative Class Members to participate in an illegal tip pool, of withholding Plaintiffs and the Putative Class Members' tips, and of completely failing to pay Plaintiffs and the Putative Class Members even the tip-credit hourly wage, Plaintiffs and the Putative Class Members were not compensated for all hours worked at the rates required by the FLSA.

82. Defendants have employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiffs.

83. Defendants are aware of their obligation to pay at least the minimum wage for all hours worked and to ensure that tips remain the property of the tipped employees but failed to do so.

84. Because Defendants did not pay Plaintiffs and the Putative Class Members for all hours worked at the rate required by the FLSA and wrongfully withheld Plaintiffs and the Putative Class Members' tips, Defendants' pay policies and practices violated (and continue to violate) the FLSA.

## VI.
## CAUSE OF ACTION

**A.  FLSA COVERAGE**

85. All previous paragraphs are incorporated as though fully set forth herein.

86. The FLSA Collective is defined as:

**ALL CURRENT AND FORMER TIP-CREDIT EMPLOYEES WHO WORKED SANG'S IMPERIAL CAFE AT ANY TIME FROM JANUARY 4, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members").**

87. At all times hereinafter mentioned, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

88. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

89. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

90. During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

91. In performing the operations described hereinabove, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

92. At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

93. In violating the FLSA, Defendants acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

94. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 86.

95. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

**B.  FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA**

96. All previous paragraphs are incorporated as though fully set forth herein.

97. Defendants violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks without compensating such employees for all hours worked at the rates required by the FLSA.

98. Plaintiffs and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiffs and the Putative Class Members would be able to precisely calculate damages.

99. Moreover, Defendants knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees the proper amount of wages for all hours worked. 29 U.S.C. § 255(a).

100. Defendants knew or should have known its pay practices were in violation of the FLSA.

101. Defendants are sophisticated parties and joint employers, and therefore knew (or should have known) their policies were in violation of the FLSA.

102. Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay for all hours worked in accordance with the law.

103. The decision and practice by Defendants to not the minimum wage was neither reasonable nor in good faith.

104. Accordingly, Plaintiffs and the Putative Class Members are entitled to all unpaid wages at the full minimum wage of $7.25 per hour for all straight-time hours worked pursuant to the FLSA, civil penalties, plus liquidated damages, attorneys' fees and costs.

### C. FLSA COLLECTIVE ACTION ALLEGATIONS

105. All previous paragraphs are incorporated as though fully set forth herein.

106. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiffs with regard to the work they performed and the manner in which they have not been paid.

107. Other similarly situated employees have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

108. The FLSA Collective Members are defined in Paragraph 86.

109. Defendants' collective failure to pay their employees for all hours worked results from generally applicable policies and practices, and does not depend on the personal circumstances of the individual FLSA Collective Members.

110. Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

111. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

112. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked each week.

113. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the FLSA Collective Members are blue-collar workers entitled to a minimum wage of $7.25 per hour for all straight-time hours worked pursuant to the FLSA.

114. Defendants have employed a substantial number of similarly situated individuals since January ___, 2019. Upon information and belief, these workers are geographically dispersed, residing and working in locations across the United States.

115. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Defendants will retain the proceeds of their rampant violations.

116. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

117. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 86 and notice should be promptly sent.

# VII.
# RELIEF SOUGHT

118. Plaintiffs respectfully pray for judgment against Defendants as follows:

    a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 86 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

    b. For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit), civil penalties, and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those who have joined in the suit);

d. For an Order awarding Plaintiffs the costs and expenses of this action;

d. For an Order awarding Plaintiffs their attorneys' fees;

e. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

f. For an Order awarding Plaintiffs service awards as permitted by law;

g. For an Order compelling the accounting of the books and records of Defendants, at Defendants' own expense;

h. For an Order providing for injunctive relief prohibiting Defendants from engaging in future violations of the FLSA, and requiring Defendants to comply with such laws going forward; and

i. For an Order granting such other and further relief as may be necessary and appropriate.

Date:   January 4, 2022                 Respectfully submitted,

                                          **ANDERSON ALEXANDER, PLLC**

                          By:    /s/ *Clif Alexander*
                                    **Clif Alexander**
                                    Federal I.D. No. 1138436
                                    Texas Bar No. 24064805
                                    clif@a2xlaw.com
                                    **Austin W. Anderson**
                                    Federal I.D. No. 777114
                                    Texas Bar No. 24045189
                                    austin@a2xlaw.com
                                    **Lauren E. Braddy**
                                    Federal I.D. No. 1122168
                                    Texas Bar No. 24071993
                                    lauren@a2xlaw.com
                                    **Alan Clifton Gordon**
                                    Federal I.D. No. 19259
                                    Texas Bar No. 00793838
                                    cgordon@a2xlaw.com
                                    **Carter T. Hastings**
                                    Federal I.D. No. 3101064
                                    Texas Bar No. 24101879
                                    carter@a2xlaw.com
                                    819 N. Upper Broadway
                                    Corpus Christi, Texas 78401
                                    Telephone: (361) 452-1279
                                    Facsimile: (361) 452-1284

                                    *Counsel for Plaintiffs and the Putative Class Members*