United States District Court
Southern District of Texas
**ENTERED**
September 19, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SCARLETT VOLLMERING, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 2:22-CV-00002 |
| | § | |
| ASSAGGIO HONOLULU, LLC, *et al.* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The Court is called upon to decide whether Defendants' motions to compel arbitration should be granted, and if so, whether this case should be dismissed or stayed.  For the reasons discussed below, the undersigned recommends that:

- Defendant Assaggio Honolulu LLC's ("Assaggio's") motion to compel arbitration with Plaintiffs be GRANTED;

- Defendant Sang Sananikone's ("Sananikone's") motion to compel arbitration with Plaintiffs be DENIED;

- Defendant HRMSTX Inc.'s ("HRMSTX's") motion to compel arbitration with Plaintiffs be GRANTED;

- The motion filed by third-party Defendants HRMSTX and George Harris to compel arbitration with Assaggio and Sananikone be GRANTED; and

- This lawsuit be STAYED pending the conclusion of the arbitration proceedings.

### A. *This case and its history.*

#### 1. *Procedural history.*

Plaintiffs Scarlett and Tristan Vollmering ("Plaintiffs") filed this Fair Labor Standards Act collective action[1] on January 4, 2022, against Assaggio and its owner, Sananikone.  (Doc. No. 1.)  Plaintiffs amended their complaint on February 11, 2022, adding HRMSTX as a defendant.  (Doc. No. 9.)  On March 15, 2022, Assaggio and Sananikone together answered Plaintiffs' complaint and amended complaint, and filed a third-party complaint against HRMSTX and George Harris ("Harris"), individually and as a representative of HRMSTX. (Doc. No. 13.)

The district court held an initial pretrial conference on April 14, 2022.  At that time, the district court set a briefing schedule regarding potential class certification.  (Doc. No. 21.)  That schedule required Plaintiffs to file any motion for class certification by July 13, 2022, with responses and replies to be filed in August 2022.  *Id.* at 1.[2]

HRMSTX and Harris answered Assaggio's and Sananikone's third-party complaint on May 9, 2022.  (Doc. No. 24.)  Having received leave from the district court, HRMSTX answered Plaintiff's complaints as well.  (Doc. No. 27.)[3]

On July 1, 2022, the undersigned conducted a hearing with all parties, to address a motion to compel discovery that Plaintiffs were considering filing.  *See* Doc. No. 29.  Such "pre-

---

[1] *See* 29 U.S.C. §§ 207, 216(b).

[2] Oral argument on any class certification motion was set for September 15, 2022.  (Doc. No. 21, p. 1.)  But according to a minute entry on the docket sheet, that hearing has been removed from the calendar.

[3] HRMSTX, but not Harris, answered Plaintiffs' original complaint, because Plaintiffs have not sued Harris.  Harris is sued only by Assaggio and Sananikone, in their third-party complaint.

motion conferences" are required by the district judge prior to the filing of discovery motions. *See* Doc. No. 21, p. 2.

On July 5, 2022, Assaggio and Sananikone together filed a motion to compel arbitration and to dismiss this case, or alternatively for stay of court proceedings.  (Doc. No. 30.)  HRMSTX filed a similar motion on July 8, 2022.  (Doc. No. 31.)  Plaintiffs responded to these motions, *see* Doc. Nos. 32, 33, and the defendants replied.  *See* Doc. Nos. 34, 35.  The matter is fully briefed and is ripe for decision.

### 2. *The parties' underlying dispute.*

Broadly stated, this case involves a dispute over wages allegedly unpaid.  Assaggio and Sananikone operated Sang's Imperial Café, a now-defunct restaurant in Corpus Christi, Texas. Assaggio and Sananikone contracted with HRMSTX, a staff leasing company, to provide employees for the restaurant.  Plaintiffs are two former Imperial Café employees who worked in the restaurant between July 2021 and October 2021.  Sang's Imperial Café did not survive the COVID-19 pandemic and is now closed.  *See* Doc. No. 13, p. 2 ¶ 3.

In their complaint, Plaintiffs bring a FLSA "collective action to recover the minimum wage, wrongfully withheld tips, overtime, liquidated damages, and all other applicable penalties," alleging that Assaggio and Sananikone wrongfully failed to pay them appropriate wages.  *See* Doc. No. 9, p. 2 ¶ 1.  Plaintiffs assert that HRMSTX is a "professional employer organization" – essentially a staff leasing company – that jointly employed Plaintiffs and was responsible for paying Plaintiffs their wages and maintaining their employee records.  *Id.* at 4 ¶ 22, 6 ¶ 40.  Plaintiffs contend that Assaggio, Sananikone, and HRMSTX, as joint employers of

Plaintiffs,[4] are jointly and severally liable for the unpaid wages and other damages or penalties. They are attempting to sue on behalf of all similarly situated employees.  *Id.* at 2 ¶ 8.

Assaggio and Sananikone respond, in their answer, that a collective action is inappropriate, because of the small size of the proposed class (fewer than five people, they claim) and the dissimilarity of its members.  (Doc. No. 13, p. 1 ¶ 1.)  They deny any violations of the FLSA, *id.* at 2 ¶¶ 4-6, 10 ¶ 64, and contend that Plaintiffs regularly failed to report all of their tips, especially cash tips, and that the "misconduct of Plaintiffs in failing to report wages and account for their work as required, is a controlling cause of any failure to pay wages . . . ."  *Id.* at 11 ¶ 70.  Assaggio and Sananikone also allege that third-party defendants HRMSTX and Harris were solely responsible for any failure to pay Plaintiffs properly, and demand indemnity or contribution from HRMSTX and Harris.  (Doc. No. 13, pp. 9-10 ¶ 60.)  Assaggio and Sananikone also allege that HRMSTX and Harris breached their contract with Assaggio and Sananikone, and that they engaged in deceptive trade practices.  *Id.* at 13.

For their part, HRMSTX and Harris echo the opposition to class certification.  (Doc. No. 27, p. 3 ¶ 9.)  They HRMSTX also deny responsibility for FLSA compliance, maintaining that Assaggio and Sananikone contractually retained that responsibility.  *Id.* at 7 ¶ 42, 9 ¶ 64.  HRMSTX and Harris also assert that Plaintiffs were paid properly for all time worked, but that the amount of any improper payment, if that occurred, was *de minimis*.  *Id.* at 11 ¶ 88.

### B. *Plaintiffs' employment agreements.*

Plaintiffs were each hired in July 2021.  They completed identical "enrollment packet[s] for employees," which included identical three-page employment agreements.  *See* Doc. Nos. 30-

---

[4]  Plaintiffs cite 29 C.F.R. § 791.2 to support their contention that Assaggio, Sananikone, and HRMSTX are "joint employers."  *See* Doc. No. 9, pp. 3-4, ¶ 15.  The Court observes, however, that all of 29 C.F.R. Part 791, including section 791.2, was rescinded in July 2021.  *See* 86 Fed. Reg. 40939 (July 30, 2021).

1, 30-2.  Plaintiff Scarlett Vollmering's enrollment form reflects a hire date of July 17, 2021, while Plaintiff Tristan Vollmering's enrollment form reflects a hire date of July 28, 2021.  (Doc. No. 30-1, p. 1; Doc. No. 30-2, p. 1.)

Both enrollment packets indicate that Plaintiffs were hired by an entity called "Corporate Solutions TX."  *See* Doc. No. 30-1, p. 1; Doc. No. 30-2, p. 1.  The heading on the enrollment packet reflects that Corporate Solutions TX is "The Human Resource Solution: Payroll, Employee Benefits, and Workers Comp Outsourcing."  (Doc. No. 30-1, p. 1; Doc. No. 30-2, p. 1.)  At the bottom of each Plaintiffs' enrollment form is a section entitled "For client office use only."  (Doc. No. 30-1, p. 1; Doc. No. 30-2, p. 1.)  On Plaintiff Scarlett Vollmering's form, the blank for "Client Company" contains the words "Sang's Imperial Café."  (Doc. No. 30-1, p. 1.)  For Plaintiff Tristan Vollmering, the blank contains the words "Assaggio Honolulu LLC, Sang's Imperial Café."  (Doc. No. 30-2, p. 1.)  In that same section, each enrollment form includes the address of the Imperial Café as the location of the Client Company.  (Doc. No. 30-1, p. 1; Doc. No. 30-2, p. 1.)  Both forms include a "Supervisor Signature" in this section, and both are signed "Sang."  (Doc. No. 30-1, p. 1; Doc. No. 30-2, p. 1.)

Each of Plaintiffs' employment agreements is entitled "Corporate Solutions Employee Agreement," and includes a number of other company names that are collectively referred to as Corporate Solutions, or "CSI."  (Doc. No. 30-1, p. 2; Doc. No. 30-2, p. 2.)[5]  The first paragraph of each agreement describes the employment arrangement as "at-will," and suggests that employment is by both Corporate Solutions and the client company:

---

[5]  The other company names are CorpSol I, CorpSol II, CorpSol III, CorpSol IV, CorpSol V, CorpSol VI, CorpSol VII, CorpSol VIII, and CSI PEO.  (Doc. No. 30-1, p. 2; Doc. No. 30-2, p. 2.)

**At Will Employment**

All employment and compensation with your assigned client company and CSI is "at will" which means that your employment can be terminated with or without cause, and with or without notice, at any time, at the option of either your assigned client company, CSI, or yourself, except as otherwise prohibited by law.

(Doc. No. 30-1, p. 2; Doc. No. 30-2, p. 2) (emphasis in original).

The employment agreements also address responsibility for payment of wages:

**Responsibility of Client Company**

Your client company is solely responsible to pay for any wages that are created by an agreement, contract, plan, or policy. (i.e., vacation, severance, PTO, etc, that is strictly the policy of the client). CSI may process payments for wages at the request or direction of the client.

(Doc. No. 30-1, p. 2, Doc. No. 30-2, p. 2) (emphasis in original).

The employment agreements also contain a provision for arbitration:

**Arbitration**

All disputes that may arise between you [the employee] and CSI and/or your assigned client company will be resolved exclusively through binding arbitration pursuant to the Federal Arbitration Act. You understand that arbitration waives trial by jury in any action and/or claim.

(Doc. No. 30-1, p. 2; Doc. No. 30-2, p. 2) (emphasis in original). Plaintiffs each signed their employment agreements. (Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4.) The versions of the employment agreements submitted by the defendants with their respective motions to compel arbitration do not reflect execution of those agreements by the client company. *See* Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4 (documents submitted by Assaggio and Sananikone); *see also* Doc. No. 31-5, p. 4; Doc. No. 31-6, p. 4 (documents submitted by HRMSTX and Harris).

At the conclusion of the employment agreement is the following language: "I understand that by signing below verifies [sic] that I have read, understand, and agree to abide by all policies

and procedures stated herein." (Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4.) After that language is a signature block for the hired employee. (Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4.) Both of Plaintiffs' employment agreements contain the signature and printed name of the respective Plaintiff on the third (final) page. (Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4.) Additionally, both employment agreements contain employee initials on the first two pages. (Doc. No. 30-1, pp. 2-3; Doc. No. 30-2, pp. 2-3.) Although they raise other arguments about the reach of the employment agreements, Plaintiffs do not dispute or contest that they signed the agreements.

After the signature block for the employee, there is another section, bearing the words "This section is to be filled out by the Client Company Representative ONLY." (Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4) (emphasis in original). The section consists of a signature block, for the printed name and signature of the "Client Company Representative." (Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4.) There is no signature or printed name in this section on either of Plaintiffs' employment agreements. (Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4.)

Further facts necessary to the disposition of this case are set forth in the sections below.

### C. The motions to compel arbitration, and the parties' arguments and evidence.

On July 5, 2022, Assaggio and Sananikone moved to compel arbitration. (Doc. No. 30.) Three days later, on July 8, HRMSTX and Harris filed a similar motion. (Doc. No. 31.)[6] All parties appear to agree that Plaintiffs signed employment agreements, but they disagree about who is party to the agreements and whether the agreements may be enforced to compel arbitration of the claims raised by Plaintiffs in this lawsuit.

---

[6] Harris' involvement in the motion is limited to a demand for arbitration with Assaggio and Sananikone, but not with Plaintiffs, because Plaintiffs have not sued Harris. *See* Doc. No. 31, pp. 2-3 ¶¶ 5-6, 6-8 ¶¶ 17-24.

### 1. *The Assaggio and Sananikone motion.*

In their motion to compel arbitration, Assaggio and Sananikone contend that the arbitration agreements are valid and binding.  (Doc. No. 30, p.1.)  Assaggio and Sananikone assert that Plaintiffs signed the employment agreements containing the arbitration clauses, that Plaintiffs' claims "are against HRMSTX, Inc. (Corporate Solutions) and its client company, Assaggio, concern compensation, and are, thus, directly related to their employment."  (Doc. No. 30, p. 5 ¶ 14.)  Assaggio and Sananikone conclude that Plaintiffs' claims "fall squarely within the scope of the Arbitration Clauses . . . ."  *Id.*  Assaggio and Sananikone further assert that they are "intended signatories" and third-party beneficiaries of the employment agreements, and thus that they are entitled to enforce the arbitration agreement.  *Id.* at 6 ¶ 17, 7 ¶ 19.

Plaintiffs counter that Assaggio and Sananikone waived any right to arbitrate by "substantially invok[ing] the judicial process."  (Doc. No. 32, p. 1.)  Plaintiffs also assert that they never agreed to arbitrate about anything with Sananikone, because the arbitration clause includes a requirement to arbitrate only with "CSI and/or your assigned client company" but makes no mention of Sananikone.  (Doc. No. 32, p. 6.)

In reply, Assaggio and Sananikone deny that they have waived their right to arbitrate. (Doc. No. 35, pp. 1-5 ¶¶ 1-10.)  They further argue that because Sananikone is the sole member and corporate representative of Assaggio, that claims against both are identical and thus "inextricably intertwined," and therefore that Sananikone is entitled to enforce the arbitration agreement as a third-party beneficiary, whose right of arbitration is necessary to effectuate the intended purpose of the arbitration agreement.  *Id.* at 5 ¶ 11.

### 2. *HRMSTX's motion.*

HRMSTX asserts in its motion to compel arbitration[7] that Plaintiffs' written agreement to arbitrate is binding.  (Doc. No. 31, p. 10 ¶ 28.)  HRMSTX further contends that Plaintiffs also agreed to the arbitration agreements through their conduct – that is, "by continuing to work after receiving clear and unequivocal notice of the agreements."  *Id*.

Plaintiffs parry by arguing that the arbitration agreements do not mention HRMSTX – only Corporate Solutions or CSI – and so there is no requirement for Plaintiffs to arbitrate with HRMSTX.  (Doc. No. 33, p. 3.)  In reply, HRMSTX contends that HRMSTX is indeed a party to the arbitration agreement, because Corporate Solutions was a trade name under which HRMSTX did business at the time the agreements were signed.  (Doc. No. 34, p. 1 ¶ 1.)

Attached to HRMSTX's motion is a declaration from Anthony Johnson, who states that he is the "President and sole owner, shareholder and officer" of HRMSTX.  (Doc. No. 31-2, p. 1 ¶ 2.)  Johnson declares that HRMSTX has done business under the trade name of "Corporate Solutions," and that HRMSTX is the "sole entity that performed all of the obligations of Corporate Solutions under the Client Service Agreement.  HRMSTX was the co-employer (along with Defendant Assaggio) of the Vollmering Plaintiffs while they worked at the restaurant in question."  *Id.* at 2 ¶ 5.  Johnson further states that the terms "Corporate Solutions" and "CSI" in

---

7  HRMSTX's and Harris' motion to compel arbitration is two-pronged.  In addition to seeking arbitration of Plaintiffs' claims, they also assert that Assaggio's and Sananikone's third-party allegations must themselves be arbitrated, based on a Client Service Agreement between them.  *See* Doc. No. 31, pp. 4-8 ¶¶ 13-24; *see also* Doc. No. 31-1 ("Client Service and Co-Employment Agreement").  Assaggio and Sananikone do not oppose that portion of HRMSTX's and Harris' motion.  *See* Doc. No. 31, p. 12.  This memorandum and recommendation therefore will not further discuss that portion of the motion; in Section J below, the undersigned recommends that HRMSTX's and Harris' motion to compel arbitration with Assaggio and Sananikone be granted.  Additionally, Harris' motion to compel arbitration is directed only at Assaggio and Sananikone, because he has not been sued by Plaintiffs.  The Court therefore discusses HRMSTX's motion to compel only with reference to HRMSTX.

the employment agreements refer to HRMSTX, and that the "client company" was Assaggio. *Id.* at 2-3 ¶¶ 7-8.

Also attached to HRMSTX's motion to compel arbitration is a declaration from Harris, in which he states, among other things, that he is "personally aware that HRMSTX does business under the trade name Corporate Solutions. This is why HRMSTX is identified as the Employer [Professional Employment Organization] in the Client Service Agreement with Assaggio." (Doc. No. 31-7, p. 2 ¶ 4.)

### D. The issues for resolution.

Section 2 of the Federal Arbitration Act provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-step inquiry." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). The courts must determine (1) "whether the parties agreed to arbitrate the dispute in question," and (2) "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) (internal quotation marks and additional citations omitted).

The determination of whether parties have agreed to arbitrate a dispute consists of two considerations: "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute falls within the scope of that arbitration agreement.'" *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016) (quoting *Tittle v. Enron Corp.*, 463 F.3d 410, 418-19 (5th Cir. 2006)); *see also Webb*, 89 F.3d at 258 (citing *Daisy Mfg. Co. v. NCR*

*Corp.*, 29 F.3d 389, 392 (8th Cir. 1994); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)).

In deciding whether legal constraints external to an arbitration agreement foreclose the arbitration of a dispute, reviewing courts assess "'whether any federal statute or policy renders the claims nonarbitrable.'" *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021) (quoting *Will-Drill Res. v. Samson Res.*, 352 F.3d 211, 214 (5th Cir. 2003)).

The Court must therefore resolve the following questions:

- Is there a valid arbitration agreement?

- If so, who is party to that arbitration agreement?  That is, who may seek to compel arbitration, and against whom?

- Does this dispute fall within that arbitration agreement?

- Is there any federal statute or policy that renders this dispute nonarbitrable?

- If there is a binding agreement to arbitrate that covers this dispute, did any of the defendants waive their right to arbitrate?

For the reasons discussed below, the Court concludes that a valid arbitration agreement exists, that Plaintiffs, Assaggio, and HRMSTX (but not Sananikone individually) are covered by that agreement, that this dispute falls within that agreement, and that no federal statute or policy prevents arbitration.  Additionally, the Court finds that none of the defendants waived their right to arbitrate.

### E. There was a valid agreement to arbitrate, and this dispute falls within the scope of that agreement. There is no federal statute or policy preventing arbitration.

#### 1. A valid arbitration agreement exists. Plaintiffs, Assaggio, and HRMSTX are bound by it.

Arbitration agreements are contracts. Whether an enforceable agreement to arbitrate existed, then, is a question of contract formation, and the answer is guided by ordinary state contract law principles governing the formation of contracts. *See Webb*, 89 F.3d at 258. The party seeking arbitration (here, Assaggio, Sananikone, and HRMSTX) bears the burden of showing, by a preponderance of the evidence, that the arbitration agreement exists. *See GC Services Limited Partnership v. Little*, No. H-19-1180, 2019 WL 5425032, at *6 (S.D. Tex. Oct. 23, 2019) (Rosenthal, C.J.) (citing *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005)).

##### a. The arbitration agreement is a valid contract, and Plaintiffs agreed to be bound by it.

Plaintiffs' employment agreements each contain a choice of law provision selecting Texas law to govern this dispute. In Texas, a binding contract requires (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds (mutual assent), (4) each party's consent to the terms, and (5) execution and delivery of the contract with intent that it be mutual and binding. *See Huckaba v. Ref-Chem. L.P.*, 892 F.3d 686, 689 (5th Cir. 2018); *see also Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App. – Houston [14th Dist.] 2010, pet. denied).

Here, the defendants have shown sufficiently that Plaintiffs assented to the arbitration provision in their respective employment agreements. The parties agree that each Plaintiff signed the employment agreement, and Plaintiffs do not contend that there was no offer or

acceptance, that there was any disagreement regarding the terms of the agreement to arbitrate, that consent was wanting, or that the agreements were not executed or delivered properly and with the requisite intent.  The Johnson affidavit states, without contradiction by Plaintiffs, that each Plaintiff was required to sign the employment agreement, including its arbitration clause, as a condition of continued employment with HRMSTX and Assaggio.  (Doc. No. 31-2, pp. 2-3 ¶ 7.)  Additionally, Plaintiffs signified by their ongoing work that they consented to the employment agreements, with the arbitration clauses included.  The Court concludes that Plaintiffs agreed to be bound by their respective employment agreements and arbitration clauses.

### b. HRMSTX is a party to the employment agreement, and can compel arbitration.

Facially, Plaintiffs' employment agreements are with Corporate Solutions, not with HRMSTX.  *See* Doc. No. 30-1; Doc. No. 30-2.  But the affidavit of Anthony Johnson, HRMSTX's "President and sole owner, shareholder and officer," *see* Doc. No. 31-2, p. 1 ¶ 2, states that HRMSTX has done business under the trade name of "Corporate Solutions," and that HRMSTX is the "sole entity that performed all of the obligations of Corporate Solutions under the Client Service Agreement."  *Id.* at 2 ¶ 5.  HRMSTX, Johnson says, was the co-employer (along with Defendant Assaggio) of the Vollmering Plaintiffs while they worked at the restaurant in question."  *Id.*  Johnson further states that the terms "Corporate Solutions" and "CSI" in the employment agreements refer to HRMSTX, and that the "client company" was Assaggio.  *Id.* at 2-3 ¶ 7.  Harris' affidavit, moreover, states that he is "personally aware that HRMSTX does business under the trade name Corporate Solutions.  This is why HRMSTX is identified as the Employer [Professional Employment Organization] in the Client Service Agreement with Assaggio."  (Doc. No. 31-7, p. 2 ¶ 4.)

13 / 36

Although Plaintiffs note that HRMSTX is not specifically listed as one of the companies specified in the employment agreement as comprising Corporate Solutions, Johnson's affidavit clarifies that HRMSTX and Corporate Solutions are synonymous, because HRMSTX operated, at all times relevant to this suit, under the name of Corporate Solutions.  (Doc. No. 31-2, p. 2 ¶ 3.)  Johnson provides an assumed name certificate, on file with the Texas Secretary of State, as proof of HRMSTX's operation as Corporate Solutions.  *See* Doc. No. 31-2, p. 2 ¶ 3; Doc. No. 31-3, p. 3.

The assumed name certificate was filed in September 2016, long before Plaintiffs signed their employment agreements.  *See* Doc. No. 31-3, p.2.  Plaintiffs contend that HRMSTX abandoned the assumed name by filing an abandonment of the certificate with the Secretary of State,[8] but Johnson avers that Corporate Solutions' assumed name certificate was on file as of September 27, 2016, and was still in effect.  (Doc. No. 31-2, p. 2 ¶ 3.)

In any case, even if HRMSTX's assumed name certificate was not validly filed as required by Texas law, a failure to comply with that requirement does not affect an entity's ability to proceed in court once the certificate is validly filed.  *See* Tex. Bus. & Comm. Code § 71.201(a); *Fogal v. Stature Const., Inc.*, 294 S.W.3d 708, 717-18 (Tex. App. – Houston [1st Dist.] 2009, pet. denied).  Plaintiffs acknowledge that such a certificate was on file with the Secretary of State no later than June 21, 2022 (Doc. No. 33, p. 3), and the Court concludes that HRMSTX possessed the ability to seek arbitration prior to filing its July 8, 2022 motion to compel.  The Court finds that HRMSTX is a party to the employment agreements with Plaintiffs, and is entitled to seek arbitration pursuant to those agreements.

---

[8]  *See* Doc. No. 33, pp. 3-4.

### c.  *Assaggio can compel arbitration, because it is a third-party beneficiary of the employment agreement.*

The employment agreement provides for arbitration of any disputes between Plaintiffs and "CSI and/or your assigned client company."  (Doc. No. 30-1, p. 3; Doc. No. 30-2, p. 3.)  The parties do not seriously dispute that Assaggio is the assigned client company.  In fact, Plaintiffs do not contend that Assaggio is not a party entitled to enforce the agreement: they argue instead that Assaggio waived that entitlement.  *See* Doc. No. 32, pp. 4-5.  The Court discusses the waiver question later in this opinion, *see* Section H, but concludes first that Assaggio is indeed entitled to enforce the arbitration agreement.

A non-signatory may invoke an arbitration agreement so long as the applicable state law allows enforcement by a non-party.  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).  Under Texas law, where a non-signatory to an agreement seeks arbitration under that agreement, the "key inquiry is whether the parties intended to encompass or include non-signatories."  *Sanchez v. Marathon Oil Co.*, No. H-20-1044, 2021 WL 1201677, at *4 (S.D. Tex. Jan. 21, 2021) (Stacy, M.J.), *adopted*, 2021 WL 1198251 (Mar. 30, 2021) (citing *Jody James Farms, JV v. The Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018)).  The Texas Supreme Court has, to date, recognized six scenarios in which arbitration with non-signatories may be required; status as a third-party beneficiary is one of these.  *Jody James*, 547 S.W.3d at 633.

A non-signatory to a contract is a third-party beneficiary under Texas law if the non-signatory establishes that (1) the parties to the contract intended to secure a benefit to it and (2) entered the contract directly for its benefit.  *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 401 (5th Cir. 2022); *see also ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.); *First*

*Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017).  Although there is a presumption against conferring third-party beneficiary status which can only be overcome by the parties' clear expression of intent, *see First Bank*, 519 S.W.3d at 103, there is no requirement that the agreement use the phrase "third-party beneficiary" or any other magic words; nor is there any requirement that a third-party beneficiary be expressly referred to by name.  *ConocoPhillips,* 2012 WL 1059084, at *6.  Courts look solely to the contract's language, construed as a whole, to determine whether the contracting parties intended to benefit a third party directly.  *First Bank*, 519 S.W.3d at 102.

Here, the arbitration agreement states that all disputes that may arise between Plaintiffs "and CSI and/or your assigned client company will be resolved exclusively through binding arbitration . . . ."  (Doc. No. 30-1, p. 3; Doc. No. 30-2, p. 3.)  In order to ensure that all terms of the contract are given legal effect, courts have consistently found that similar language confers third-party beneficiary status.  *E.g.*, *ConocoPhillips*, 2012 WL 1059084, at *6 ("all disputes between or among [employees] and [employer's clients]"); *Ferron v. Precision Directional Servs., Inc.*, No. 4:20-cv-3123, 2021 WL 6618657, at *5-6 (S.D. Tex. Sept. 21, 2021) (Sheldon, M.J.), *adopted*, 2021 WL 5905556 (S.D. Tex. Dec. 14, 2021) ("In the interest of resolving disputes between you and RigUp, or you and RigUp's customers, in the most expedient and cost effective manner, . . ." arbitration is agreed to) (emphasis omitted).

As in *Ferron*, the Court finds that Plaintiffs and HRMSTX clearly expressed intent to make Assaggio a third-party beneficiary to the arbitration agreement.  Consequently, Assaggio can demand arbitration with Plaintiffs.

### 2. *Sananikone cannot compel arbitration.*

In resisting the defendants' bid to compel arbitration, Plaintiffs contend that they never agreed to arbitrate anything with Sananikone individually, and that she is not a party to the employment agreement and its arbitration clause. Plaintiffs deduce that the arbitration agreement does not apply to their claims against Sananikone. (Doc. No. 32, p. 6.) Assaggio and Sananikone reply that Sananikone may enforce the arbitration agreement. (Doc. No. 35, pp. 4-6, ¶¶ 13-16.) The Court sides with Plaintiffs.

#### a. *Sananikone is not a third-party beneficiary.*

Sananikone is not a signatory to the employment agreements. Her signature does appear on Plaintiffs' enrollment forms, but as the "supervisor;" she, individually, is not listed as an employer of Plaintiffs on either the employee enrollment form or the employment agreement. *See* Doc. Nos. 30-1, 30-2.[9] Nevertheless, Assaggio and Sananikone insist that the claims brought by Plaintiffs against Sananikone are identical to the claims they bring against Assaggio, that Sananikone is "the sole member and corporate representative" of Assaggio, and that Plaintiffs' claims against each are "inextricably intertwined." (Doc. No. 35, p. 5 ¶ 11.) Assaggio and Sananikone conclude that Sananikone, like Assaggio, is a third-party beneficiary to the employment agreement and the arbitration agreement. *Id.* This result, Assaggio and Sananikone state, is necessary in order to effectuate the intended purpose of Assaggio's agreement with

---

[9] In this case, the Court concludes that it does not matter that the employment agreements do not bear the actual signatures of anyone other than Plaintiffs. The absence of a signature from a contract does not destroy its validity. As long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract. *See ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.-Corpus Christi 2003, pet. denied). "If the contract is signed by one party, the other may accept by her acts, conduct or acquiescence in the terms of the contract." *Lee & Lee Int'l., Inc. v. Lee*, 261 F. Supp. 2d 665, 672 (N.D. Tex. 2003) (citation omitted).

HRMSTX, which, they say, is to ensure arbitration with any claims against either HRMSTX or its clients. *Id.* Essentially, the argument is that Sananikone is just as much an intended beneficiary of the arbitration agreement as Assaggio itself.

Although the argument is facially appealing, the Court is not persuaded. Texas law presumes that noncontracting parties are not third-party beneficiaries. *Newman*, 23 F.4th at 401 (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 420 (Tex. 2011)). A bid to overcome that presumption must demonstrate that the contracting parties – those who signed – both "intended to secure a benefit to a third party" and "entered into the contract directly for the third party's benefit." *Id.* (quoting *Jody James*, 547 S.W.3d at 635). In the case of Assaggio, as discussed above, there is clear indication in the terms of the agreement itself that Plaintiffs and HRMSTX sought to make Assaggio the beneficiary of the arbitration provision, because they specified that all "disputes that may arise between [Plaintiffs] and CSI and/or your assigned client company" were to be resolved through arbitration. *See* Doc. No. 30-1, p. 3; Doc. No. 30-2, p. 3. There is no similar mention, however, of Sananikone herself. To secure the benefit of arbitration for Sananikone, the agreement "must have 'clearly and fully spelled it out.'" *Newman*, 23 F.4th at 402 (quoting *Jody James*, 547 S.W.3d at 635) (internal brackets omitted). "Only a benefit that would confer [Sananikone] the status of a 'claimant' in the event of breach will do." *Id.* (citing *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 505 (Tex. 1975)). The employment agreements in this case simply do not do that, and whatever Sananikone's own individual expectations for benefit might have been, they must be denied. *Cf. Newman*, 23 F.4th at 402 (citing *Jody James*, 547 S.W.3d at 635). Additionally, where third-party beneficiary status is doubtful, that status must be denied. *Id.* (citing *Tawes v. Barnes*, 340 S.W.3d 419, 425

(Tex. 2011)).  The Court finds that Assaggio and Sananikone have failed to overcome the presumption against third-party beneficiary status for Sananikone.

### b.  Assaggio and Sananikone have waived any argument of intertwined claims estoppel by failing to brief it.

In reply to Plaintiffs' contention that Sananikone is not a party to the arbitration agreement and cannot enforce it, Assaggio and Sananikone contend that the claims brought by Plaintiffs against Sananikone are identical to the claims they bring against Assaggio, that Sananikone is "the sole member and corporate representative" of Assaggio, and that "all claims asserted by Plaintiffs against all Defendants are inextricably intertwined."  (Doc. No. 35, p. 5 ¶ 11.)  The wording of Assaggio's and Sananikone's contentions suggest that they might be seeking to invoke the doctrine of intertwined claims estoppel as a basis for empowering Sananikone to compel arbitration.

Assaggio and Sananikone, however, never mention the word "estoppel," and they offer no legal argument or authority in support of any such contention.  Rather, the next (and final) sentence in their argument asserts that Sananikone is a third-party beneficiary of the employment agreement.  (Doc. No. 35, p. 5 ¶ 11.)  The Court finds that Assaggio and Sananikone waived any argument for intertwined claims estoppel by failing to brief it.  *Cf. Carmona v. Brennan*, No. 4:19-cv-4579, 2022 WL 363856, at *3 (S.D. Tex. Jan. 5, 2022) (Hanen, J.) (citing *Mayo v. Halliburton Co.*, No. CIV.A.-10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) ("failure to brief an argument in the district court waives that argument.")).

In any event, the Court harbors doubt whether the doctrine would apply even if Assaggio and Sananikone had briefed it.  Intertwined claims estoppel involves "'compel[ling] arbitration when a nonsignatory defendant has a 'close relationship' with one of the signatories and the

claims are 'intimately founded in and intertwined with the underlying contract obligations.'"
*Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (quoting *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193-94 (Tex. 2007)).  "Our cases have recognized that under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  *Hays*, 838 F.3d at 610 (quoting *JLM Indus., Inc., v. Stolt-Nielsen, SA*, 387 F.3d 163, 177 (2d Cir. 2004) (internal quotation marks omitted)).  An application of the doctrine in this case would have meant that Sananikone, a nonsignatory to the employment agreement, could enforce the arbitration clause in that agreement against the signatory Plaintiffs.

No decision of the Texas Supreme Court precisely recognizes intertwined claims estoppel.  The United States Court of Appeals for the Fifth Circuit has held, however, via an "*Erie* guess,"[10] that the doctrine does exist in Texas, and that it applies when (1) a nonsignatory has a "close relationship" with one of the signatories, and (2) the claims are "intimately founded in and intertwined with the underlying contract obligations."  *Newman*, 23 F.4th at 404 (citing *Hays*, 838 F.3d at 612).

Here, there is evidence that Sananikone has a "close relationship" with Assaggio.  The Court first observes that there is no evidence in the record conclusively indicating that Sananikone is the "sole member and corporate representative" of Assaggio.  Assaggio and Sananikone so assert in their reply brief in support of their motion to compel arbitration,[11] but

---

[10]  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[11]  Doc. No. 35, pp. 1-2 ¶¶ 1-2, 5 ¶ 11.

argument of counsel is not evidence.  *See Chester v. Assocs. Corp. of N. Am.*, No. 3:97-CV-3186-L, 2000 WL 743679, at *3 (N.D. Tex. May 26, 2000).  Other competent evidence exists, however, suggesting formal affiliation between Sananikone and Assaggio.  Some of this evidence is offered by Plaintiffs themselves.  Plaintiffs' complaint alleges that Assaggio is a "domestic limited liability company" and that Sananikone is "a Managing Member of Assaggio and an employer as defined by 29 U.S.C. § 203(d)."  (Doc. No. 9, p. 3 ¶¶ 12-13.)  Plaintiffs further allege that Assaggio, Sananikone, and HRMSTX are "joint employers" with "common ownership, oversight and control over Plaintiffs."  *Id.* ¶ 15.  Record evidence also shows that Sananikone signed the employment agreements as the "supervisor" of each Plaintiff, *see* Doc. No. 30-1, p. 4; Doc. No. 30-2, p. 4, and Plaintiffs do not contend that she lacked the authority to do so.  Sananikone also signed Assaggio's Client Service Agreement with HRMSTX as Assaggio's "owner," and warranted that she had the authority to sign that agreement on behalf of Assaggio.  (Doc. No. 31-1, pp. 17, 18 ¶ 23.)  The Harris affidavit, further, states that Sananikone is the "owner" of Assaggio.  (Doc. No. 31-7, p. 2 ¶ 5.)  Sananikone also personally guaranteed that Assaggio would comply with the terms and conditions of the Client Service Agreement with HRMSTX.  *See* Doc. No. 31-1, p. 19; Doc. No. 31-2, p. 2 ¶ 6.  In the personal guaranty, Sananikone stated that she had "a substantial interest" in Assaggio and in seeing that HRMSTX provided services to Assaggio.  (Doc. No. 31-1, p. 19.)  As Assaggio and Sananikone also point out, the claims brought against Sananikone individually are identical to those brought against Assaggio.  Plaintiffs have treated Assaggio and Sananikone as a single unit in their pleadings, raising identical factual allegations against them.  The Fifth Circuit has found that such pleading

"cuts in favor of a close relationship." *Newman*, 23 F.4th at 405 (citing *Hays*, 838 F.3d at 612-13).[12]

On the other hand, research has revealed no case in which the doctrine of intertwined claims estoppel was applied when the nonsignatory had a "close relationship" with an entity that itself had not signed the agreement but was merely a third-party beneficiary to an agreement signed by others.  In other words, even if Sananikone had a close relationship with Assaggio, the fact remains that Assaggio itself is not a signatory to the employment agreement but is only a third-party beneficiary of that agreement.  This additional "degree of separation" ultimately might not be found to make a difference when evaluating whether intertwined claims estoppel ought to apply, but the Court has found no case in which such a situation has been posed and is not at all confident that the Fifth Circuit's *Erie* guess in *Hays* properly extends to such a situation.

Also in need of resolution would be the question of whether the claims that Sananikone seeks to arbitrate are "intimately founded in and intertwined with the underlying contractual obligations."  *See Newman*, 23 F.4th at 404.  There are some indications that they are.  Although Plaintiffs bring their lawsuit under the FLSA, rather than under the employment agreement, all of Plaintiffs' claims arise from their employment, which is governed by the employment agreements that each Plaintiff signed.  These claims, moreover, are precisely the same claims that Plaintiffs have raised against HRMSTX (a party to the employment agreement) and Assaggio (a third-party beneficiary of the employment agreement.)

---

[12]  The Fifth Circuit's decision in *Newman* was the subject of a motion for *en banc* rehearing.  The court recently denied *en banc* rehearing in an evenly split vote, with three judges filing a dissenting opinion.  *See Newman v. Plains All Am. Pipeline, L.P.*, 44 F.4th 251 (5th Cir. 2022).

The Court concludes that Sananikone is not a party to the employment agreements with Plaintiffs.  She likewise is not a third-party beneficiary.  The Court finds that Sananikone, individually, may not compel Plaintiffs to arbitrate.  Should the district court disagree, however, the Court evaluates in Section H below whether Sananikone waived any right to arbitrate, and finds that she did not.

### F.  This dispute falls within the arbitration agreement.

The parties do not appear to contest whether the dispute at issue in this case falls within the scope of the arbitration agreement.  The agreement is broadly worded and provides: "All disputes that may arise between you and CSI and/or your assigned client company will be resolved exclusively through binding arbitration pursuant to the Federal Arbitration Act."  (Doc. No. 30-1, p. 3; Doc. No. 30-2, p. 3.)  Plaintiffs' claims are between themselves and their employers, and concern the employment that is the subject of the arbitration agreement.  None of Plaintiffs' claims appear to fall outside the scope of the arbitration agreement, and Plaintiffs do not contend otherwise.  The language of the arbitration clause, while broad, is not ambiguous.  See Sanchez, 2021 WL 1201677, at *4.  The Court finds that Plaintiffs' claims in this case fall within the arbitration agreement's scope.

### G.  There is no federal statute or policy preventing arbitration.

None of the parties have contended that a federal statute or policy operates to prevent or foreclose arbitration in this case.  See Polyflow, 993 F.3d at 302.  Additionally, the Court's research has revealed no such impediment to arbitration.  The Court finds that federal law and policy do not render the parties' dispute nonarbitrable.

### H.  Defendants did not waive their right to arbitrate.

Like other contractual rights, a party may waive its right to arbitration of a dispute.  *See Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009).  For the reasons discussed next, none of the defendants have waived their right to arbitrate this dispute with Plaintiffs.

#### 1.  Standard for determining waiver.

Although the question of contract formation is determined by reference to state contract law, whether a party has waived the right to arbitrate is a question of federal law.  *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 999 F.3d 257, 266 (5th Cir. 2021), *cert. denied,* —— U.S. ——, 142 S. Ct. 2752 (2022) (mem.).  Waiver is the "intentional relinquishment or abandonment of a known right."  *United States v. Olano*, 507 U.S. 725, 733 (1993).

Such relinquishment or abandonment might be manifested in various ways.  It could be express, such as a party's specific statement that it is forgoing its right to arbitration.  Or a waiver could be inferred, through a party's conduct.  In this circuit, a party waives its right to arbitration by "substantially invoking the judicial process."  *See Forby v. One Techs., L.P.*, 13 F.4th 460, 465 (5th Cir. 2021) (citations omitted).  The Fifth Circuit has described how a party may be found to have met this standard.  To invoke the judicial process, a party "must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration."  *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999); *see also Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009)).  The term "invoke" means merely that the party has litigated the claim that it now seeks to arbitrate.  In other words, the party must implement or enforce the judicial process, but need not call upon the judicial system for support or assistance, "as say, one would invoke a spirit or

the elements." *Subway*, 169 F.3d at 329 (5th Cir. 1999); *see Petroleum Pipe*, 575 F.3d at n.3 ("In this context, we regard the judicial process as a mechanism: to invoke it is to implement it.").

Our circuit's test for waiver has also included a prejudice requirement: a party's substantial invocation of the judicial process was also required to inflict prejudice or detriment upon the opposing party. *See Forby*, 13 F.4th at 465 (citing *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)); *see also Subway*, 169 F.3d at 326. But in *Morgan v. Sundance, Inc.*, the Supreme Court recently ruled that the Federal Arbitration Act's "policy favoring arbitration" served merely to restore arbitration contracts to parity with other types of contracts – a level playing field – with regard to waiver. 142 S. Ct. 1708, 1713-14 (2022). As the Supreme Court stated: "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218-21 (1985); *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987) ("The Supreme Court has made clear" that the FAA's policy "is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism")).

After *Morgan*, the Fifth Circuit has since remanded an arbitration-waiver case for further reconsideration in light of *Morgan* and *Forby*, *see Barnett v. Am. Express Nat'l Bank*, No. 21-60799, 2022 WL 2337391 (5th Cir. June 29, 2022), but has not elaborated on the current test for waiver. In the absence of any intervening Fifth Circuit authority dictating otherwise, the Court follows *Morgan* and concludes that the surviving test for waiver in this circuit is the remainder of Fifth Circuit's prior test: whether the party has substantially invoked the judicial process. *Cf. Morgan*, 142 S. Ct. at 1714 (describing the remaining Eighth Circuit waiver inquiry, stripped of

its prejudice requirement); *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305, 2022 WL 3097883, at *7 & n.6 (E.D.N.Y. Aug. 4, 2022) (applying the remaining Second Circuit factors, minus prejudice, in determining whether waiver occurred).[13]

*Morgan* also teaches that courts may not "invent special, arbitration-preferring procedural rules."  142 S. Ct. at 1713 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Prior cases in our circuit have applied a "strong presumption" against a finding of waiver, attributed to the "policy favoring arbitration."  *E.g.*, *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 542 (5th Cir. 2016); *Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d 416, 421-22 (5th Cir. 2014).  Courts in this circuit have consequently stated that a party asserting waiver carries a "heavy burden of proof."  *E.g.*, *Forby*, 15 F.4th at 465 (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)).  But after *Morgan*, any presumption against a finding of waiver, or assignment of a "heavy burden of proof" to a party asserting waiver of an arbitration agreement, might now be suspect, because such presumptions or proof standards appear to be precisely what *Morgan* forbids: special procedural rules favoring arbitration.  To be sure, a party attempting to demonstrate that its opponent has substantially invoked the judicial process does face a burden, but the Court perceives that this burden is no heavier than that required to prove waiver of any other type of contractual right, and that the measuring scale is no longer weighted on one side with a presumption against a finding of

---

[13] Other courts are similarly grappling with our circuit's test for waiver of arbitration in the wake of *Morgan*.  In one recent case, for example, a district court in the Southern District of Mississippi observed: "Having stripped the prejudice requirement from the analysis for waiver, it is unclear whether the inquiry for waiver in the Fifth Circuit is whether the party seeking arbitration substantially invokes the judicial process or waiver is when one knowingly relinquishes the right to arbitrate by acting inconsistently with that right."  *Kabasi v. Clearone Advantage, LLC*, No. 1:21-CV-388-TBM-RPM, 2022 U.S. Dist. LEXIS 135241, at *4 (S.D. Miss. July 29, 2022) (McNeel, J.).  The *Kabasi* court found that the result will often be the same under either test.  *Id.*  After reviewing both *Morgan* and the Fifth Circuit case law predating it, the undersigned concludes that substantial invocation of the judicial process is merely a means by which a party knowingly relinquishes its right to arbitrate.  In other words, by seeking to litigate a dispute rather than arbitrate it, the party knowingly and irrevocably forgoes its right to arbitrate.

waiver.  "[T]he policy [favoring arbitration] is to make arbitration agreements as enforceable as other contracts, but not more so."  *Morgan*, 142 S. Ct. at 1713.  As will be discussed next, however, the Court finds that the defendants did not waive their right to arbitrate, regardless of whether an anti-waiver presumption is applied.

### 2.  *There was no waiver of arbitration in this case.*

The Court finds that the defendants in this case have not waived their right to arbitration, whether a presumption against a finding of waiver continues to exist or not.[14]  First, there has been no express waiver of arbitration by any defendant, and Plaintiffs do not contend otherwise. Nor, as discussed next, has there been an inferred waiver by the defendants' conduct.

### a.  *Assaggio and Sananikone.*

Plaintiffs argue that Assaggio and Sananikone waived their right to arbitrate by failing to raise arbitration in their answer, and by filing the third-party complaint against HRMSTX and Harris for indemnity, contract breach, and deceptive trade practices.  (Doc. No. 32, pp. 1, 4-5.) Adding the "apparently independent claims" beyond mere indemnity, Plaintiffs insist, is "far more than mere substantial invocation of the judicial process – it is supersized invocation."  *Id.* at 5.  In reply, Assaggio and Sananikone rather unhelpfully do not address the matter of their third-party complaint, focusing instead on other litigation actions in this case.  *See* Doc. No. 35, pp. 3-5 ¶¶ 7-11.

Research has revealed no case in this circuit stating whether the filing of a third-party complaint suffices to waive a party's right to arbitrate.  In those out-of-circuit cases that do consider the question, the analysis is complicated by the consideration of whether prejudice

---

[14]  As noted above, the undersigned finds that Sananikone individually does not have the right to compel arbitration with Plaintiffs.  Should the district court disagree, however, the undersigned evaluates whether Sananikone waived her right to arbitrate, and finds that, like Assaggio, she did not.

existed, as all of the cases found by the undersigned were decided prior to *Morgan*.  A good example is *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974 (4th Cir. 1985).  There, the plaintiffs sued for breach of contract.  The defendants answered, and then (among other things) lodged a third-party complaint for indemnification and damages from any breach of the contract. The parties then conducted discovery.  Two months later, the third-party defendant moved for dismissal of the third-party complaint, relying on an arbitration clause, and the defendant moved for dismissal of the plaintiff's complaint in favor of arbitration.  Meanwhile, discovery continued.  *Maxum*, 779 F.2d at 976-77.  The Fourth Circuit, in finding that waiver did not occur by virtue of the third-party complaint and discovery, focused on the absence of prejudice: "When, as here, the third-party action does not involve additional discovery or procedural burdens for the original plaintiff, the mere filing of a third-party complaint by a party that seeks arbitration will not permit a court to find that the right to arbitrate has been waived.  In general, the third-party claim will not have resulted in 'actual prejudice' to the party opposing arbitration."  *Id*. at 982.

The lone case cited by any party on this issue falls victim to the same affliction, couching its discussion in terms of prejudice.  *See Berryman v. Newalta Env't Servs., Inc.* No. 18-793, 2018 WL 5723290, at *9 (W.D. Pa. Nov. 1, 2018) ("In determining a waiver of arbitrability, the court's primary concern is prejudice.").  One Third Circuit case did find a waiver of arbitration where a defendant filed a third-party complaint.  But there, the court noted that, among other things, the defendant had also denied the existence of any arbitration agreement.  *See SuperMedia v. Affordable Elec., Inc.*, 565 F. App'x 144, 148 (3d Cir. 2014).

In this case, the Court is not persuaded that the filing of the third-party complaint, even with its inclusion of additional grounds for relief, amounts to a waiver of Assaggio's and

Sananikone's right to arbitrate the dispute with Plaintiffs.  Assaggio and Sananikone certainly implemented the judicial process by filing their third-party complaint, but despite Plaintiffs' characterization to the contrary, the Court does not agree that such action amounts to the "substantial invocation of the judicial process" required for waiver of arbitration rights.  True, the third-party complaint makes no mention of arbitration rights, and this arguably could suggest an intent to forgo arbitration in favor of litigation.  *Cf. Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 949 (1st Cir. 2014), *abrogated on other grounds*, *Morgan*, 142 S. Ct. at 1712 n.1 (plaintiff's conduct evinced clear intent to forgo arbitration and resolve the disputed matter through litigation).  But if Assaggio and Sananikone had not filed their third-party complaint within 14 days after filing their answer, they would have been required to seek leave of court in order to bring those claims later.  *See* Fed. R. Civ. P. 14(a)(1).  This suggests to the Court that Assaggio's and Sananikone's third-party complaint was intended merely to preserve their claims against HRMSTX and Harris, not to signal intent to forgo arbitration with Plaintiffs.  *Cf. United States v. Williams Bldg. Co., Inc.*, 137 F. Supp. 3d 6, 11-12 (D. Mass. 2015) (filing of third-party complaint did not evidence intent to forgo arbitration).  And indeed, there is no evidence before the Court or other indication that Assaggio and Sananikone have taken any further steps to pursue litigation of the third-party complaint.  The Court concludes that Assaggio's and Sananikone's filing of their third-party complaint, without more, is insufficient to constitute a substantial invocation of the judicial process and waive arbitration, and certainly is not the "supersized invocation" of the judicial process that Plaintiffs ask the Court to find.

Examination of the other of-record actions taken by Assaggio and Sananikone similarly indicates that those defendants have not substantially invoked the judicial process.  Those actions, the Court finds, are these:

- March 15, 2022: Assaggio and Sananikone file their answer to Plaintiffs' complaint and amended complaint.  (Doc. No. 13.)  They do not mention arbitration.

- April 1, 2022: Assaggio and Sananikone participate with Plaintiffs in the submission of a joint discovery and case management plan.  (Doc. No. 16.)  In the filing, the parties state: "Defendant contends that the claims of the named and opt-in plaintiffs must be submitted to binding arbitration pursuant to valid and enforceable agreements that so require." *Id.* at 2.  Later in that filing, the parties state that they have "discussed whether this case should or must be submitted to binding arbitration but are awaiting the production of the signed arbitration agreements." *Id.* at 5.  Finally, the parties state: "Unless by consent and agreed order, Defendant intends to file a motion to compel arbitration of all claims made by the named and all opt-in plaintiffs." *Id.* at 6.

- April 14, 2022: At the initial pretrial conference, counsel for Assaggio and Sananikone states that Assaggio and Sananikone will not be "pushing" arbitration at this time because neither of the Plaintiffs had signed an arbitration agreement.  Rather, counsel indicates, the arbitration agreements had apparently been with HRMSTX.  Counsel and the district court agree at the hearing that arbitration is not an issue at that time.  The district court then sets a briefing schedule for the class certification motion.  (Doc. No. 21.)

- July 1, 2022: After Plaintiffs signal an intent to file a motion to compel discovery during the class certification process, the undersigned holds a pre-motion conference.  At the conference, the defendants express reluctance to engage in discovery lest they be found to have substantially invoked the judicial process.  The parties ultimately agree that Plaintiffs will not rely on participation in such discovery to argue that the defendants had waived their right to arbitration.

- July 5, 2022: Assaggio and Sananikone move to compel arbitration.  (Doc. No. 30.)

From the foregoing information, the Court finds that Assaggio and Sananikone did not substantially invoke the judicial process.  Although they did not mention arbitration in their answer and third-party complaint (Doc. No. 13), it is apparent that Assaggio's and Sananikone's counsel believed at that time that Plaintiffs had not signed arbitration agreements with them. This view is reflected in the comments at the April 14 initial conference, at which counsel indicated that Assaggio and Sananikone were not pursuing arbitration because Plaintiffs' arbitration agreements were with HRMSTX.  Additionally, the parties stated in their joint discovery and case management plan that they were awaiting the production of the signed employment agreements.  (Doc. No. 16 at 5.)

Now that the employment agreements containing the arbitration provisions have been revealed, the Court discerns nothing in Assaggio's and Sananikone's actions to indicate that they are intentionally relinquishing their right to arbitrate by taking "some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway*, 169 F.3d at 329.  Indeed, at the July 1 pre-motion conference, counsel for Assaggio and Sananikone was careful to note that those defendants were sensitive to the danger of waiving their right to arbitrate and wished to avoid such a waiver.  Additionally, Assaggio and Sananikone did not assert any counterclaim against Plaintiffs, have not filed any motion to dismiss (other than this one, for arbitration) or any motion for summary judgment.  And they state that although they have responded to a round of discovery from Plaintiffs, they have not propounded discovery of their own.  *See* Doc. No. 35, p. 3 ¶ 6.

Considering the totality of the circumstances, the Court concludes that Assaggio and Sananikone did not engage in overt conduct in court that evinced a desire to resolve the dispute

through litigation rather than arbitration.  The Court therefore concludes that they did not waive their right to arbitrate.

### b.  HRMSTX did not waive arbitration, either.

As discussed above, Plaintiffs' argument against arbitration with HRMSTX and Harris is that the arbitration agreements do not include HRMSTX as a party with whom Plaintiffs must arbitrate.  *See* Doc. No. 33, p. 1.  Plaintiffs do not contend that HRMSTX has waived its right to arbitration, and indeed, HRMSTX has not waived its right to arbitrate this dispute.

HRMSTX raised the matter of arbitration in its answer to Plaintiffs' complaint.  (Doc. No. 27, p. 11 ¶ 84 (HRMSTX "affirmatively avers that all claims made by Plaintiffs against Defendant/Third Party Defendant HRMSTX (either directly or derivatively) are subject to binding arbitration as a result of an arbitration clause in the agreement between Plaintiffs and Defendant HRMSTX.").)  Other than filing its answer, HRMSTX has not taken any apparent steps to do anything in this case – at least, not of record in this Court – and Plaintiffs do not contend otherwise.  HRMSTX does not appear to have propounded discovery, has not filed a motion to dismiss (other than the motion that is the subject of this order), and has not sought summary judgment.  HRMSTX had not yet appeared or answered at the time of the April 14 initial conference, so no statement of HRMSTX's suggests any intent to litigate this matter rather than arbitrate.  The Court concludes that HRMSTX has not substantially invoked the judicial process.  HRMSTX therefore has not waived its right to arbitrate this dispute.

### I.  Dismissal or stay?  A stay is more appropriate.

The final remaining issue is whether the Court should stay the case pending arbitration or dismiss it.  Assaggio asks the Court to dismiss the action, or alternatively to stay it.  *See* Doc. No. 30, pp. 8-9 ¶¶ 22-24.  HRMSTX initially asked the Court to stay the action, or alternatively to

dismiss, *see* Doc. No. 31, pp. 10-11 ¶¶ 29-30, but in its reply brief has now reversed its prioritization and asks the Court to dismiss or alternatively to stay.  *See* Doc. No. 34, p. 4.  The undersigned concludes that a stay of the proceedings is the better choice.

The Federal Arbitration Act mandates a stay upon a showing that a suit has been brought upon any issue referable to arbitration.  *See* 9 U.S.C. § 3.  As discussed above, the arbitration provisions in the employment agreements require submission of Plaintiffs' claims against Assaggio and HRMSTX to arbitration.  Section 3 therefore requires a mandatory stay of this lawsuit.

In the Fifth Circuit, district courts possess discretion to order dismissal of an action rather than a stay in the proper circumstances, such as when "*all* of the issues raised in the district court must be submitted to arbitration."  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original) (citations omitted).  In that situation, retaining jurisdiction and staying the action would "serve no purpose."  *Id.*  But even then, *Alford* merely held that dismissal was not an abuse of discretion by the district court in that case; it did not prescribe or mandate dismissal in any situation, and the Court has discretion whether to direct dismissal.  *See Rainey v. Citigroup, Inc.*, 779 F. App'x 258, 259 n.1 (5th Cir. 2019).

*Alford* contemplates discretion to dismiss an action when all of the issues raised in the district court must be submitted to arbitration.  That is not the case here, for Plaintiffs' claims against Sananikone are not required to be submitted to arbitration.  "[C]ourts in the Fifth Circuit interpreting the *Alford* case have only found dismissal appropriate over a stay when *all* of the issues regarding *all* of the parties are arbitrable."  *J and J Sports Prods., Inc. v. Mandell Family Ventures, LLC*, No. 3:10-CV-02489-BF, 2012 WL 4512497, at *4 (N.D. Tex. Oct. 2, 2012) (emphasis in original) (citations omitted).  Because the entirety of this action is not arbitrable, the

Court recommends against dismissal pending arbitration of those claims that are arbitrable and recommends instead only that § 3's mandatory stay be imposed.

While § 3 mandates a stay for HRMSTX and Assaggio, the Court concludes additionally that a discretionary stay for Sananikone is also appropriate.  The Court has the discretion to direct such a discretionary stay.  *See Rainer DSC 1, L.L.C. v. Rainier Cap. Mgmt.*, *L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (citing *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004)); *see also Moses H. Cone*, 460 U.S. at 20 n.23 ("In some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration.  That decision is one left to the district court . . . as a matter of its discretion to control its docket.").

A discretionary stay for Sananikone is not improper even though Sananikone is not party to the arbitration agreement.  The claims that Plaintiffs raise against Assaggio are identical to and inseparable from those they raise against Sananikone individually.  They arise from the same operative facts, they are founded on the same provisions of the FLSA, and they seek the same relief.  Declining to grant a stay with regard to Sananikone would undermine or adversely affect the bargained-for arbitration rights held by HRMSTX and third-party beneficiary Assaggio; in essence, requiring continued litigation  would destroy HRMSTX's and Assaggio's right to a meaningful arbitration.  *See Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 541 (5th Cir. 2001).  In *Waste Management*, the Court determined that the arbitrator in that case, "[g]iven the binding effect of a federal judgment, as well as the factual similarities in [the plaintiff's] asserted claims, . . . would necessarily be strongly influenced to follow the court's determination."  372 F.3d at 345 (citation omitted).  Permitting litigation against Sananikone to proceed while arbitration on

the same claims is pending risks inconsistent results and would strongly influence the arbitrator's consideration of Plaintiffs' claims.

The Court concludes that a discretionary stay of this action is appropriate with regard to Sananikone, and that in sum, a stay of the entire action is therefore appropriate.

### J. Recommendation.

The undersigned recommends that Assaggio's and Sananikone's motion to compel arbitration with Plaintiffs (Doc. No. 30) be GRANTED IN PART (with regard to Assaggio) and DENIED IN PART (with regard to Sananikone), and that Plaintiffs and Assaggio be ordered to submit their dispute to binding arbitration.

The undersigned further recommends that HRMSTX's motion to compel arbitration with Plaintiffs (Doc. No. 31) be GRANTED, and that Plaintiffs and HRMSTX be ordered to submit their dispute to binding arbitration.

The undersigned further recommends that HRMSTX's motion to compel arbitration with Assaggio and Sananikone (Doc. No. 31), which Assaggio and Sananikone do not oppose, be GRANTED, and that HRMSTX, Assaggio, and Sananikone be ordered to submit their dispute to binding arbitration.

The undersigned further recommends that this lawsuit be STAYED pending completion of the arbitration proceedings.  Because the timing of the arbitration proceedings and awards is uncertain, the undersigned further recommends that the Court administratively close this case, and that any party be permitted to move to reinstate the case on the active docket within seven days after the first arbitration award issues.  *Cf. Sullivan v. Feldman*, No. H-20-2236, 2021 WL 3742022, at *2 (S.D. Tex. Aug. 24, 2021) (Rosenthal, C.J.).

### K.  Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on September 17, 2022.

MITCHEL NEUROCK
United States Magistrate Judge